UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEAN ANN SIMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0157-CVE-PJC |
| | ) | |
| **SAKS FIFTH AVENUE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. # 29). Plaintiff filed this lawsuit alleging that defendant Saks Fifth Avenue, Inc. ("Saks") was negligent for failing to warn her that a security sensor was attached to an item of clothing and, due to Saks' negligence, she stepped on the security sensor, fell, and suffered serious injuries. Saks has filed a motion for summary judgment asserting that the security sensor was an open and obvious danger, and a reasonable person would have appreciated the danger caused by stepping on the sensor.

**I.**

On March 9, 2004, Jean Ann Simpson entered the Saks department store located in Utica Square in Tulsa, Oklahoma. Simpson regularly shopped at Saks and, on this occasion, she was looking for new clothes for a trip to San Francisco, California. She had shopped at this Saks location for approximately 13 years and, in particular, the St. John department on the second floor of the store. On that day, Simpson was using a walker "to get around faster," but it is not clear if she always used a walker. Dkt. # 29, Ex. A, at 59. Kathy Holland, a salesperson for the St. John department, greeted Simpson. Holland helped Simpson find several items of clothing and carried the clothes to a dressing room for Simpson.

Holland took Simpson to a dressing room and Simpson tried on a pair of black pants. At this point, Holland left Simpson to attend to other customers and to call a seamstress to assist Simpson with alterations. Simpson pulled on the black pants without pushing her left foot all the way through the pant leg and tried to stand up. She claims that she stepped on a security sensor attached to the left pant leg and lost her balance. Simpson fell into the dressing room door and onto the floor. She claims that she dislocated her right shoulder and that she suffered permanent injuries to her right arm. Holland was about 15 feet away when Simpson fell and she heard "something that sounded like it had fallen." Id., Ex. B, at 56. Holland went to the dressing room and opened the door. She found Simpson on the floor lying next to a chair in the dressing room. Holland notified the store manager, Joanne Hart, about the incident, and Hart arrived quickly. Hart removed the security sensor on the pants to permit Simpson to leave the store without setting off the store's alarm. Simpson was taken to the St. John Medical Center emergency room by ambulance and treated for her injuries.

Saks uses security sensors to prevent theft of expensive clothing items, but it does not have a store policy requiring its staff to warn customers about the presence of sensors. The stem of the sensor is attached to the inside of an item of clothing and is approximately 2 1/2 to 2 3/4 inches long.[1] The sensor is affixed to the stem using a pin which is pushed through the item of clothing and into the stem. The pin-side of the sensor has a small, circular piece of plastic that is visible from the outside of a garment and, according to plaintiff, this piece of plastic is about the size of a dime. The

---

[1] Plaintiff disputes defendant's statement that the stem is 2 3/4 inches long. Dkt. # 33, at 5. For the purpose of ruling on defendant's motion for summary judgment, a quarter inch difference in the hidden portion of the sensor is not relevant to the Court's determination of whether the sensor was an open and obvious danger.

current manager at the Saks location in Utica Square, Keith Sturtevant, stated that at Saks the larger portion of the sensor is hidden for aesthetic reasons, because Saks does not want a customer's focus taken from the garment and directed to the sensor. Id., Ex. F, at 26. The sensors are removed at the register by store personnel when a customer purchases an item. Holland testified that every piece of clothing in the St. John department had a security sensor. Dkt. # 29, Ex. B, at 18. Simpson states that she has "no knowledge of how long security sensors have been utilized on merchandise in the Saks store at Utica Square, but [she knows] that [she] had never encountered them on previous visits to the store." Dkt. # 32, Ex. G, at 4.

Holland has seen customers step on a sensor but she was not aware of a sensor causing an injury to a customer. Dkt. # 32, Ex. B, at 36, 66; Id., Ex. C, at 5. She did not warn customers about the presence of sensors because she assumed that customers were aware that Saks attached sensors to expensive items. At her deposition, Holland testified that sensors were attached to any item costing over $200.[2] In reference to Simpson, Holland believed that Simpson was aware that sensors were attached to many of the clothes at Saks, because Simpson had shopped at the store for 13 years. Id., Ex. B, at 76.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

---

[2] Sturtevant testified that sensors were used on items costing $500 or more. Id., Ex. F, at 12. Hart testified that, when she was the store manager, there was a minimum dollar amount to determine when a sensor was used, but she could not remember the specific amount. Id., Ex. E, at 12.

3

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Defendant argues that the security sensor attached to the pants was an open and obvious danger, and it did not have a duty to warn plaintiff about the sensor. Plaintiff argues that three genuine issues of material fact preclude summary judgment: "(1) what Mrs. Simpson knew about

the existence of sensor devices prior to the accident, (2) whether the sharp protruding end of a hidden device constitutes a hazard, and (3) whether a device specifically hidden by the [d]efendant constitutes an 'open and obvious' danger." Dkt. # 33, at 10.  Defendant replies that factors unique to plaintiff, such as her age, physical condition, and experiences, are irrelevant, and the sole issue is whether a reasonable person in plaintiff's position would have appreciated a hazard caused by the sensor.  Dkt. # 34, at 1.  Defendant also argues that Simpson's conduct, failing to observe the sensor and standing up before her leg was completely through the pant leg, may have caused or contributed to her injury.

The parties do not dispute that plaintiff was a business invitee.  Under Oklahoma law, an invitee "assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is [not] liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of ordinary care."  Williams v. Tulsa Motels, 958 P.2d 1282, 1284 (Okla. 1998).  An invitor is not a guarantor of an invitee's safety and has no duty to warn an invitee about dangers that are or should be known to the invitee.  Dover v. Braum, Inc., 111 P.3d 243, 245 (Okla. 2005).  In the exercise of reasonable care, an invitor must keep the premises in a reasonably safe condition and warn an invitee of conditions which are "in the nature of hidden dangers, traps, snares or pitfalls."  Martin v. Aramark Servs., Inc., 92 P.3d 96, 97 (Okla. 2004). Regardless of a person's age and health, he or she has a duty to exercise ordinary care to avoid open and obvious dangers on another's premises.  See Nicholson v. Tacker, 512 P.2d 156 (Okla. 1973). A heightened duty of care between a landowner and visitor to a premises arises only when a special or custodial relationship exists between the parties.  Pickens v. Tulsa Metropolitan Ministry, 951 P.2d 1079, 1086-87 (Okla. 1997).

The Court has reviewed the summary judgment record and finds that a genuine issue of material fact exists as to whether the security sensor constituted an open and obvious danger. Plaintiff has presented evidence that the visible portion of the sensor was approximately the size of a dime. Dkt. # 32, Ex. A, at 2. Sturtevant testified that Saks places the larger part of the sensor on the inside of clothes and purposefully places the sensor there to avoid drawing attention to it. Id., Ex. F, at 26 (explaining that the stem "draws your eye if it's on the outside" and detracts from the appearance of the garment). Although Simpson was trying on black pants and the sensor was white or beige, defendant has not shown that it is undisputed that a customer exercising ordinary care for his or her own safety would have seen a dime-sized sensor or appreciated a risk of danger from stepping on the sensor. To the extent that Simpson's own conduct may have caused or contributed to the injury, plaintiff cites her own deposition testimony and a recorded statement by Holland to support her argument that stepping on the sensor caused the accident. See Dkt. # 32, Ex. C, at 5 (in a recorded statement on March 17, 2005, Holland identified the sensor as the "defect or hazard" that could have caused or contributed to the accident); Id., Ex. D, at 71 (plaintiff testified that stepping on the sensor was the sole cause of her injury).

The small size of the sensor and the conscious effort by Saks to keep it from plain view raise the genuine issue of material fact as to the open and obvious quality of the danger presented by the security sensor. The cases cited by defendant concern larger or more apparent hazards, such as puddles, walls, bright orange electical cords, and a paint can placed in a sidewalk. See Williams, 958 P.2d at 1284 (hotel guest admitted that he saw a maid mopping the floor and continued to walk on the wet floor); Pickens, 951 P.2d at 1084 (danger from sleeping on a retaining wall was open and obvious); Kastning v. Melvin Simon & Assoc., Inc., 876 P.2d 239 (Okla. 1994) (puddle

approximately four to five feet wide constituted open and obvious danger); Southerland v. Wal-Mart Stores, Inc., 848 P.2d 68 (Okla. 1993) (danger presented by a bright orange electrical cord stretched over a white tile floor was open and obvious even if the plaintiff did not personally observe the cord); Wise v. Roger Givens, Inc., 618 P.2d 951 (Okla. Civ. App. 1980) (paint can placed in hole in sidewalk and protruding three to six inches above the level of the sidewalk was open and obvious hazard). Unlike the cases cited by defendant, the danger presented by the security sensor is not so open and obvious that the Court can rule as a matter of law that it was an open and obvious danger, and summary judgment is inappropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 29) is **denied**.

**DATED** this 20th day of May, 2008.

*[signature: Claire V. Eagan]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT