UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEAN ANN SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0157-CVE-PJC |
| | ) | |
| SAKS FIFTH AVENUE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: (1) Defendant's Amended Motion in Limine and Brief in Support (Dkt. # 36); (2) Plaintiff's Motion in Limine (Dkt. # 37); and (3) Motion in Limine of Defendants [sic] Saks, Inc. (Dkt. # 48).[1]

### I.

Saks raises four issues in its amended motion in limine (Dkt. # 36): (1) evidence of medical bills that were written off by Medicare providers should be excluded; (2) evidence of Medicare payments should be excluded because plaintiff did not contribute to Medicare; (3) other similar incidents involving other customers should be excluded; and (4) the recorded statement of Saks' employee Kathy Holland should be excluded as hearsay. Plaintiff objects to each of defendant's arguments.

Medicare Write-Offs

Saks argues that medical bills written off by providers to accommodate Medicare's payment schedules are not admissible to prove damages, because "[n]o one paid the written-off amounts and

---

[1] At the pretrial conference, defendant Saks Fifth Avenue, Inc.'s ("Saks") stipulated that its original motion in limine (Dkt. # 35) is moot due to the filing of its amended motion in limine (Dkt. # 36).

no one ever will be obligated to pay them." Dkt. # 36, at 2. Plaintiff argues that evidence of Medicare write-offs should be excluded under the collateral source rule. The collateral source rule is a substantive rule of evidence and the Court must apply Oklahoma law to determine the admissibility of this evidence. Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998). In a tort action, evidence that an injured party has received compensation from a collateral source wholly independent of the defendant is not admissible. Blythe v. University of Oklahoma, 82 P.3d 1021, 1026 (Okla. 2003); Gladstone v. Bartlesvill Independent Sch. Dist. No. 30, 66 P.3d 442, 452 n.56 (Okla. 2003). Oklahoma courts have not addressed the precise issue raised by defendant, but courts in other jurisdictions have considered the admissibility of Medicare write-offs to reduce a plaintiff's claim for damages. This is a significant issue for plaintiff because, if the written-off amounts are excluded, this will significantly limit her damages.[2]

>The Tenth Circuit has discussed the purpose of Medicare Part A:
>
>This is an Act of 1965 to protect individuals 65 years of age and over from the high cost and the hardship of illness. Part A is a program of hospital insurance. It has a trust fund, the source of which is taxes paid by the employees, employers and self-employed persons. The benefits available under Part A include hospital coverage and a variety of post-hospital home health services. Eligibility exists by reason of the certificate of the physician of the beneficiary as to need for the service.

Martinez v. Richardson, 472 F.2d 1121, 1123 (10th Cir. 1973). Many state supreme courts have considered the applicability of the collateral source rule to Medicare write-offs, and decisions can be found supporting the admissibility or the exclusion of this evidence. The weight of authority supports plaintiff's argument that the collateral source rule bars any reference to amounts written off by a hospital under a contract with Medicare. See Rose v. Via Christi Health System, Inc., 78

---

[2] According to Saks, plaintiff claims that she has incurred $234,000 in medical bills, without write-offs, because of her slip and fall. Dkt. # 45, at 1.

P.3d 798 (Kan. 2003) (treating Medicare in same manner as other privately-obtained health insurance and applying collateral source rule); Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135 (Miss. 2002) (same); Candler Hosp., Inc. v. Dent, 491 S.E.2d 868 (Ga. App. 1997) (applying collateral source rule to Medicare write-offs but allowing the defendant hospital to set off any amounts it actually wrote off before entry of judgment); Brown v. Van Noy, 879 S.W.2d 667 (Mo. App. 1994) ("the fact that the expenses were 'taken care of' by Medicare is not materially different than expenses paid by insurance or paid in part by insurance with part 'written off' pursuant to a contract . . . ."). Defendant cites two federal district court decisions from Kansas assuming that the Kansas Supreme Court would allow a defendant to use evidence of Medicare write-offs, but both decisions were effectively overruled by the Kansas Supreme Court's decision in Rose. See Wildermuth v. Station, 2002 WL 922137 (D. Kan. Apr. 29, 2002); Strahley v. Mercy Health Center of Manhattan, Inc., 2000 WL 1745291 (D. Kan. Nov. 9, 2000). Defendant also cites a decision by the Louisiana Court of Appeals admitting evidence of Medicaid write-offs. Terrell v. Nanda, 759 So.2d 1026 (La. Ct. App. 2000). While this rule has been affirmed by the Louisiana Supreme Court, that court suggested that evidence of Medicare write-offs would be excludable under the collateral source rule. Bozeman v. State, 879 So.2d 692, 705 (La. 2004). The Pennsylvania Supreme Court held that Medicare write-offs should be excluded, because the proper measure for damages under Pennsylvania law is the "reasonable value" of medical services. Moorhead v. Crozer Chester Med. Ctr., 765 A.2d 786 (Pa. 2001). However, this decision has been heavily criticized by other courts and defendant has cited no case showing that Oklahoma applies a similar test for damages.

As this is an issue of substantive Oklahoma law, this Court must determine how the Oklahoma Supreme Court would resolve this issue. This Court finds that the Oklahoma Supreme

Court would follow the decisions of the majority of state supreme courts and apply the collateral source rule to bar admission of Medicare write-offs to reduce a plaintiff's damages. Oklahoma decisions generally apply the collateral source rule broadly in favor of a plaintiff and exclude evidence of an alternative or collateral source that would lessen a plaintiff's damages. See Blythe, 82 P.3d at 1026-27 (applying collateral source rule in Workers' Compensation Court to exclude evidence that injured worker's medical expenses were paid by insurance); Porter v. Manes, 347 P.2d 210 (Okla. 1959) (evidence that a plaintiff's damages have been reimbursed or lessened by a contribution from a collateral source wholly independent of the defendant is not admissible); Denco Bus Lines v. Hargis, 229 P.2d 560, 564 (Okla. 1951) (insurance benefits paid for by the injured plaintiff and not contributed to by the defendant are a collateral source). The Oklahoma Supreme Court has permitted a defendant to set off any amounts actually paid by a defendant or the defendant's liability insurer to the plaintiff. Overturff v. Hart, 531 P.2d 1035, 1038 (Okla. 1975). If the plaintiff introduces evidence of insurance payments, the evidence is admissible, but the plaintiff may request a jury instruction informing the jury of the collateral source rule. Robinson v. Borg-Warner Protective Servs. Corp., 31 P.3d 1041, 1045 (Okla. 2001). Collateral source evidence may also be admissible if a plaintiff claims that a defendant's failure to pay medical bills caused emotional distress damages, but the bills were actually paid by an independent source. Rucker v. Mid Century Ins. Co., 945 P.2d 507, 511 (Okla. Civ. App. 1997). Defendant provides no argument concerning the application of the collateral source rule in Oklahoma and, regardless of the decisions reached by courts in other jurisdictions, there is no indication that the Oklahoma Supreme Court would adopt the rule proposed by defendant. In Mascenti v. Becker, 237 F.3d 1223 (10th Cir. 2001), the Tenth Circuit erred on the side of caution and interpreted Oklahoma's collateral source

broadly to exclude evidence of payments by third-parties when it was unclear how the Oklahoma Supreme Court would resolve the specific application of the collateral source rule. Id. at 1240-41. This Court follows the Tenth Circuit approach and holds that the subject medical bills are admissible.

Medicare Payments

Defendant argues that evidence of Medicare payments should be excluded, because plaintiff did not contribute to Medicare. Saks cites Overton v. United States, 619 F.2d 1299 (8th Cir. 1980), which held that evidence of Medicare payments is admissible in a case against the United States when the plaintiff has not contributed to Medicare, because the payments are not from a collateral source. Id. at 1309. This rule makes sense in a case against the United States, because Medicare payments made by the government when a plaintiff has not contributed to the Medicare program do not fall within the definition of a collateral source. For the same reasons stated above, defendant has not shown that evidence of Medicare payments should be admitted. If evidence of Medicare write-offs is inadmissible, it would not make sense to find that the actual payments are admissible. Medicare is undoubtedly a collateral source wholly independent of Saks, and the collateral source rule applies with equal force to evidence of Medicare payments.

Other Similar Incidents

Defendant asks the Court to exclude evidence that other customers stepped on security tags while trying on clothes. Although neither party uses the exact terminology, defendants are asking the Court to exclude evidence of other similar incidents. Plaintiff claims that this evidence is relevant to whether the danger posed by the security sensor was open and obvious.

Admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case.'" Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987) (quoting Karns v. Emerson Elec. Co., 817 F.2d 1452, 1460 (10th Cir. 1987)). "Substantial similarity depends on the underlying theory of the case." Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.3d 1434, 1440 (10th Cir. 1992). While a party may lay a foundation for this evidence in the presence of the jury, the court should rule on the admissibility of this evidence outside the presence of the jury. Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988). Most of the law concerning the admission of other similar incidents has been developed in the context of products liability litigation. However, Tenth Circuit precedent discusses admissibility of evidence of other similar incidents in the context of an element of plaintiff's claim, and the substantial similarity test is simply an application of the relevance requirement of Fed. R. Evid. 401.

Plaintiff has not provided enough information concerning her theory of the case to permit a preliminary ruling on this issue. If plaintiff attempts to hold Saks liable for failing to warn her about the security sensor, evidence of other similar incidents could be relevant. However, this does not relieve plaintiff of the burden to prove that the other incidents were substantially similar, nor does this prevent defendant from arguing that the evidence should be excluded under Fed. R. Evid. 401 and 403. This issue will be addressed outside the presence of the jury.

Holland's Recorded Statement

Defendant argues that the recorded statement of its employee, Kathy Holland, is hearsay and should be excluded unless plaintiff can satisfy an exception to the hearsay rule. Plaintiff responds that Holland's statement is an admission by party opponent and is admissible under Fed. R. Evid.

801(d)(2). Holland gave a recorded statement to Saks' liability insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), in March 2004.[3] The key statement in Holland's recorded statement appears to be her alleged admission that other customers also stepped on security sensors.[4] This may be a moot issue at trial because the hearsay issue is easily overcome. Holland has been identified by both parties as a fact witness and she can make the same statements at trial without violating the hearsay rule. If she denies making the statement, the recorded statement could be used to impeach Holland with a prior inconsistent statement, but neither party would have a reason to introduce the statement into evidence.

Assuming Holland's appearance does not resolve this issue, defendant argues that Holland's statement is not an admission by party opponent, because a low-level employee does not have authority to make a statement binding on her employer. The plain language of Rule 801(d)(2) refers to a "statement by a person authorized by the party to make a statement concerning the subject." The Tenth Circuit has identified three factors that must be satisfied before an employee's statement is admissible against an employer under Rule 801(d)(2): (1) "the party must establish the existence of the employment relationship independent of the declarant's statement offered as evidence;" (2) "[t]he statement must be made during the existence of the declarant's 'agency or employment;'" and (3) "[t]he statement must concern a matter within the scope of declarant's employment." Boren v. Stable, 887 F.2d 1032, 1038 (10th Cir. 1989). The only factor in dispute is Holland's authority, but

---

[3]  Saks' motion states Holland gave a recorded statement on March 4, 2004, but plaintiff's accident did not occur until March 9, 2004. The actual statement has not been produced and the date of the statement is uncertain.

[4]  Of course, this aspect of Holland's testimony may be excluded as an inadmissible reference to other similar incidents unless plaintiff can show that this evidence is relevant.

this largely depends on the substance of her recorded statement. Defendant argues that Holland was not an officer or director of Saks and, therefore, was not authorized to speak on behalf of Saks. Plaintiff does not address this argument. Instead, plaintiff argues that Saks has adopted Holland's statement as the truth and her statement should be admissible as an adoptive admission. This does not assist in deciding if Holland was speaking on matters within the scope of her employment when giving the recorded statement. Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1565 (11th Cir. 1991) (party seeking to admit statement of employee as admission by party opponent must lay foundation that the statement falls within the scope of agency or employment). Plaintiff has not produced any evidence showing that Holland was speaking about matters within the scope of her employment or that Saks adopted Holland's statement. Plaintiff also argues that the Holland's statement may be admitted as a recorded recollection under Fed. R. Evid. 803(5). However, the record is insufficient to show that plaintiff can satisfy the requirements of Rule 803(5). First, plaintiff must show that Holland "lacks sufficient memory to testify fully" without reading her past statement to her. United States v. Dazey, 403 F.3d 1147, 1166-67 (10th Cir. 2005). Holland's statement was recorded by Liberty Mutual's investigator, not Holland, and in such cases the party seeking to admit the statement must present the testimony of the person who recorded the statement to lay a proper foundation for the accuracy of the recording. United States v. Hernandez, 333 F.3d 1168, 1177-78 (10th Cir. 2003). It would be premature to make a ruling on this issue because no such foundation has been laid.

**II.**

Plaintiff raises eight issues in her motion in limine (Dkt. # 37) and five of the issues are wholly uncontested by defendant. Specifically, defendant has no objection to plaintiff's motion in

limine to exclude evidence of (1) attorney advertising; (2) doctor advertising; (3) when plaintiff retained counsel; (4) possible causes of plaintiff's injury; and (5) the existence of a lawsuit crisis. See Dkt. # 44, at 2. The other three issues are contested.

<u>Collateral Source Payments</u>

Plaintiff seeks the exclusion of any "mention of the fact that Plaintiff may have received money for [her] damages from a collateral source wholly independent of the Defendant." Dkt. # 37, at 3. This is not a controversial topic and defendant has given no indication that it will attempt to introduce evidence traditionally barred by the collateral source rule, such as insurance payments to plaintiff. However, defendant argues that Medicare write-offs were not paid by anyone and will not be paid by anyone, and evidence of Medicare write-offs is not barred by the collateral source rule. This admissibility of medical bills written off by Medicare has been addressed above. <u>See</u> <u>supra</u>, at 1-5. To the extent plaintiff seeks to exclude other evidence, it would be premature to issue a ruling because neither plaintiff nor defendant has identified any other evidence falling with the scope of the collateral source rule.

<u>Plaintiff's Non-Related Medical History</u>

Plaintiff asks the Court to exclude any reference to her "unrelated" medical problems or history. However, defendants are concerned that plaintiff is trying to bar relevant evidence. According to defendant, plaintiff is attempting to argue that Saks owed her a higher duty of care because it was aware of her age and medical problems. Defendant also argues that plaintiff's medical history is relevant to her damages claim, because she should not be permitted to recover damages for costs or expenses she would have incurred without the accident. For example, defendant has learned that plaintiff hired three "servants" before the accident, and defendant claims

that plaintiff is including the same "servants" in her claim for damages. Defendant also claims that plaintiff regularly used a walker before the accident. However, plaintiff now claims that the accident caused her to use a walker and she is seeking related damages.

Plaintiff's prior medical history will be an issue to the extent that she makes it an issue at trial. If she attempts to claim damages for a pre-existing injury that defendant believes was not aggravated by her slip and fall, defendant will be permitted to introduce medical evidence to the contrary. Likewise, if plaintiff claims that her fall exacerbated a pre-existing condition, the jury must be informed of the nature of the pre-existing condition to determine the proper measure of damages. Oklahoma Uniform Jury Instruction 4.10, which the Court will likely give at trial, states that the measure of damages for a pre-existing injury aggravated by an accident is limited to "the additional injury caused by the aggravation." Bierman v. Aramark Refreshment Servs., Inc., ___ P.3d. ___, 2008 WL 867329 (Okla. Apr. 1, 2008). Of course, plaintiff's medical history with no relevance to the present accident should be excluded. However, it would be premature to exclude references to plaintiff's medical history without more information about the injuries she allegedly suffered in her slip and fall. Plaintiff's motion in limine is denied as to this issue.

Plaintiff's Previous Marriages

Plaintiff is currently single but she has been married twice, and she asks the Court to exclude any reference to her previous marriages. Defendant argues that plaintiff is 82 years old and this is not a unique situation. Defendant also claims that plaintiff is partially relying on her marital status to argue that she needs additional help around the house due to her injuries. Defendant assures the Court that it will not attempt to draw any adverse personal inferences from plaintiff's previous marriages. Given that plaintiff has been married twice and is 82 years old, this is not unusual and

it would not be prejudicial. However, neither party needs to refer to plaintiff's marriages, because the parties can elicit testimony that plaintiff is single without mentioning her marriages. Plaintiff's current marital status and the fact that she lives by herself, rather than her marriages, are the relevant facts. The motion in limine is granted as to the marriages but denied as to her marital status.

### III.

Defendant asks the Court to exclude the expert testimony of occupational therapist Lon Huff and any evidence of damages that was not disclosed during discovery. The first part of defendant's motion is a Daubert challenge to the admissibility of expert testimony. Defendant challenges Huff's qualifications to testify and asserts that he reached his conclusions using unreliable methodology. Plaintiff responds that Huff's methodology was sound and Saks is improperly using a Daubert motion to challenge Huff's opinions.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of expert testimony under Fed. R. Evid. 702. In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a Daubert challenge. First, the court should make a preliminary finding that the expert is qualified to testify. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a reliable factual basis. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)). The party offering the expert's testimony has the burden to prove that the expert is qualified and that his opinions are reliable. Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001); see also Fed. R. Evid. Advisory Committee Note to 2000 Amendments ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

Plaintiff describes Huff as an "expert in rehabilitation, life care planning and economic issues related to personal injury." Dkt. # 52, at 2. Huff received a Bachelor of Science in Speech from Oklahoma State University ("OSU") and a Master of Science in Student Personnel Administration and Guidance from OSU. He worked as a vocational rehabilitation counselor for the Oklahoma Department of Human Services, Division of Rehabilitative Services, in two different positions from 1974 to 1978. He served as the Director of Rehabilitative Services for the Oklahoma Workers' Compensation Court from 1979 to 1983. In 1984, he formed his own company, LDH Consultants,

Inc., and he provides vocational expert testimony in a variety of contexts. See id., Ex. 1, at 1 (curriculum vitae of Huff). Defendant does not mention its challenge to Huff's qualification in its reply and, based on his experience with the Workers' Compensation Court, it appears that Huff is qualified based on his training and experience to testify about the costs of plaintiff's future health care needs. However, Huff is not a doctor and he may not testify from a medical perspective about plaintiff's medical needs or the extent of her injury.

Defendant's argument concerning the admissibility of Huff's testimony is essentially that Huff estimated the cost of hiring a home health care service without considering plaintiff's previous health problems or her existing staff of personal assistants. Huff believes that it will cost plaintiff $51,100 per year to hire a home health care service for eight hours per day and, based on a life expectancy of 91.4 years, he estimates that plaintiff should be awarded a lump sum of $439,460 for home health care services. He further opines that additional health care costs, such as physical therapy and doctor visits, will cost plaintiff an additional $70,520. This adds up to a total of $509,980 in future health care costs that Huff believes plaintiff will incur due to her injury. Defendant claims that plaintiff employed three "servants" performing many of the same tasks before her slip and fall, and Huff fails to offset plaintiff's future costs to account for plaintiff's pre-existing costs for personal staff. Plaintiff suggests that defendant should have hired its own expert to challenge Huff's conclusions rather than file a motion to exclude Huff from testifying at trial.[5] In fact, plaintiff states that Saks has "chosen to lie behind the log and cry foul on the eve of trial." Dkt.

---

[5] Plaintiff also claims that Huff has been permitted to testify as a life care planning expert in the Western District of Oklahoma on at least two occasions. Dkt. # 52, at 3, 7. However, this does not assist the Court when determining if his testimony is based on reliable facts and data in this case.

# 52, at 12. However, a <u>Daubert</u> motion is an appropriate pretrial motion, and the mere fact that defendant filed a <u>Daubert</u> motion does not suggest that Saks has engaged in improper litigation tactics.

Huff's report undoubtedly overlooks many key facts about plaintiff's status before the accident. Huff claims that plaintiff can not drive, clean the house, or live on her own without hiring help. However, defendant states that plaintiff hired household help for services such as cleaning, cooking, and driving before her accident. It is not clear what facts plaintiff presented to Huff for preparation of his report, but he does not mention the existence of "servants" or household help before the accident. If his opinion is based on inaccurate or misleading facts, this is a basis to exclude his testimony. Fed. R. Evid. 702 (expert testimony admissible only if it "based upon sufficient facts or data"); <u>Mitchell</u>, 165 F.3d at 781-822 (a party seeking to admit expert testimony must show that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements"). Stated another way, Huff's testimony will not assist the trier of fact if it not based on reliable facts. From reading Huff's report, it is not clear what evidence he relied upon when reaching his estimates of future health care costs. He states that he "made contact with various vendors" and he assumes an average hourly rate of $17.50 for home health care, but it is not clear how he derived this figure. Dkt. # 48, Ex. B. While an expert's report does not have to anticipate every possible challenge to his opinions, he must clearly state his opinions and the basis for his opinions. <u>Miller v. Pfizer, Inc.</u>, 356 F.3d 1326, 1332 (10th Cir. 2004). In this case, the evidence supporting Huff's opinions is not clearly identified in his report, aside from Huff's statements that he researched certain types of data before reaching his opinions. Plaintiff's characterization of

defendant's motion as a challenge to Huff's conclusions does not relieve plaintiff of her burden to show that Huff's testimony is reliable. Although plaintiff argues that Huff relied on data relied on by experts in the field, it is not evident from his report what data he reviewed.[6] However, the Court will preliminarily rule that Huff's testimony is admissible. Defendant's concerns about Huff's alleged oversight of evidence limiting plaintiff's claim for future home health care services can be addressed through cross-examination and, given the notable absences in Huff's report, the Court has no doubt that defendant will vigorously cross-examine Huff about his opinions and the bases for his opinions.

Regardless of this preliminary ruling, defendant raises a legitimate challenge to Huff's statement that his estimates "do[] not account for inflation." Dkt. # 48, Ex. B, at 5. Plaintiff will not be permitted to supplement Huff's testimony with new opinions or data so close to trial, and allowing Huff to make such a statement would encourage the jury to speculate about the effect of inflation without any actual data. The Federal Rules of Civil Procedure require an expert witness to prepare a report "containing a complete statement of all opinions to be expressed." Fed. R. Civ. P. 26(a)(2)(B). A party's failure to disclose the identity of an expert witness or provide an expert report requires the court to automatically exclude expert testimony unless the violation of Rule 26(a)(2) was justified or was harmless under the circumstances. Fed. R. Civ. P. 37(c)(1); Woodworker's Supply, Inc., v. Principal Mut. Life Ins. Co., 170 F.3d 985, 992-93 (10th Cir. 1999). Under Rule 26(a)(2), courts may exclude specific opinions or bases for the expert's opinions that

---

[6] Plaintiff has provided a cover sheet to Huff's expert report in which Huff states that he reviewed "[n]umerous medical records, information provided by Ms. Simpson, contact with various home health agencies, and information from the National Vital Statistics Reports." Dkt. # 52, Ex. 7, at 6. While he provides some general reference to the types of data he reviewed, the actual data has not been disclosed.

15

were not fairly disclosed in the expert's report. Keach v. United States Trust Co., 419 F.3d 626, 641 (7th Cir. 2005). Huff did not provide a basis for this statement about inflation in his report and did not supplement in a timely manner, his opinion concerning the speculative effect of inflation should be excluded.[7]

Defendant also argues that plaintiff has not produced the evidence supporting her claim for past home health services and defendant claims she was required to produce this evidence as part of her initial Rule 26 disclosures or discovery responses. It is not clear from Saks' motion if this alleged failure to produce documents concerns general discovery responses or evidence that Huff relied on when preparing his report. Saks did request all documents relied upon by Huff and any evidence supporting plaintiff's claim for damages during discovery. Dkt. # 59, Exs. 3, 4. If plaintiff failed to produce documents that Huff actually relied upon, this could result in a sanction barring the evidence. Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, In Salt Lake County, Utah, 156 Fed. Appx. 96, 101 (10th Cir. Dec. 2, 2005) (affirming magistrate judge's decision to sanction a party that withheld expert discovery by barring use of the undisclosed evidence at trial).[8] However, plaintiff was not required to produce, in her initial disclosures, every document relied upon by Huff, and this is not a basis to exclude his testimony. Id. (parties required to describe relevant documents in Rule 26(a)(1) disclosures but opposing party must actually request the documents under Fed. R. Civ. P. 34). Plaintiff responds that it has produced all of the evidence requested by Saks and this is the first time Saks has requested the supporting documentation for

---

[7]   Saks also notes that plaintiff has not retained an economics expert to discuss the discount rate if plaintiff receives a lump sum award of damages. Dkt. # 59, at 7.

[8]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

16

alleged economic damages. To the extent that this is a routine discovery dispute, the parties could have resolved the issue before a magistrate judge.[9] This aspect of defendant's motion in limine is denied, but plaintiff is advised that she may not seek to admit evidence at trial that was actually relied upon by Huff but not produced to defendant.

**IT IS THEREFORE ORDERED** that Defendant's Amended Motion in Limine and Brief in Support (Dkt. # 36) is **granted in part** and **denied in part:** it is granted with respect to evidence of other similar incidents and Holland's recorded statement, it is denied with respect to Medicare-write-offs and Medicare payments. Plaintiff's Motion in Limine (Dkt. # 37) is **granted in part** and **denied in part:** it is granted as to all issues except as to unidentified collateral source evidence, plaintiff's medical history, and plaintiff's marital status. Motion in Limine of Defendants [sic] Saks, Inc. (Dkt. # 48) is **granted in part** and **denied in part:** Huff may not testify about the effect of inflation on plaintiff's future medical costs, but defendant's request to exclude Huff's testimony in its entirety is denied.

**DATED** this 8th day of August, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[9]    However, Saks did not file a motion to compel, and untimeliness is a legitimate reason to deny a pretrial request for discovery. Norton v. The City of Marietta, Oklahoma, 432 F.3d 1145 (10th Cir. 2005) (district court did not abuse its discretion by denying motion to compel filed two days before pretrial conference on basis on untimeliness); Continental Indus., Inc. v. Integrated Logistics Solutions, LLC, 211 F.R.D. 442, 444 (N.D. Okla. 2002) (denying motion to compel filed three weeks before trial because it would divert the parties' attention from trial preparation). In this case, Saks has not filed a motion to compel and raises a discovery dispute in a motion in limine. Without a motion to compel on file, there is no reason to even consider a routine discovery dispute so close to trial and there is no reason to refer the matter to a magistrate judge. See Southwest Stainless, L.P. v. Sappington, 2008 WL 1777476 (N.D. Okla. 2008) (affirming magistrate judge's decision denying informal request for discovery because no motion to compel was filed).